LYON *v.* STATE.

[92 South. 581. No. 22742.]

HOMICIDE. *Evidence held to prove conspiracy to kill deceased.*

Where the testimony for the state showed that several men called at the home of the appellant about twelve o'clock at night, and appellant lent one of these men his shotgun and was himself armed with a pistol, as were all of the other men, and that they in company went to the house of the deceased, where one of the party made inquiry for deceased and ascertained that he was not at home, and that they then proceeded a short distance and met deceased, and one of them engaged him in conversation and in a few moments shot him with the shotgun of appellant, whereupon there were from fifteen to thirty pistol shots fired, and all of these men participated in the shooting, fatally wounding the deceased, the jury were amply warranted in believing that these men entered into and carried out a conspiracy to take the life of the deceased, and were warranted in finding him guilty of murder.

APPEAL from circuit court of Chickasaw county.

HON. W. A. ROANE, Judge.

George Lyon was convicted of murder, and he appeals. Affirmed.

*J. H. Ford* for appellant.

We earnestly contend that the evidence did not support the verdict and that the peremptory instruction should have been in defendant's favor. The evidence for the prosecution fails to show that he was guilty. The evidence for both the state and the defendant shows that he was not guilty.

No one contended that appellant was present at the home of the deceased when Henry Gardner was doing the talking he did to deceased's people. He says he was not there, that he did not intend to go to deceased's when he left home. Tucker testified appellant did not go to the house. That testimony was admitted on the theory that there was a conspiracy formed beforehand to kill deceased, and the prosecution entirely destroyed that theory by its own evidence. It proved that appellant had nothing whatever to do with the difficulty, knew nothing about its coming up, had no agreement to kill or hurt the deceased, and fled when it came up. Tucker told the witness, Tom Smith, just after the difficulty, that appellant did nothing but run.

So, the state having destroyed the conspiracy theory and appellant knowing nothing about the trouble until the fatal difficulty arose, the statements of Gardner at the home of deceased a little while before the difficulty in the absence of appellant, were purely hearsay as to appellant, and should not have been admitted against him. They were of the most hurtful character imaginable and were unquestionably very damaging to the cause of the defense.

The alleged statements of Dick Lyon and his acts in inducing deceased to go with him the night of the diffi-

culty were not admissible against appellant from any view of the case. By this evidence the impression was sought to be made by the prosecution that Dick Lyon was also a party to the alleged conspiracy and that he played his part by getting deceased away from his home that night so that he could be killed by the other alleged conspirators.

The proof shows that deceased and Dick Lyon left deceased's home early in the night and went to Una to a supper where they remained until late in the night and that they came back to McCondy when Dick remained with a friend, and deceased proceeded on his way home and had traveled something like a mile from where he left Lyon when he met Tucker, appellant and others when the difficulty took place. Una was in the opposite direction from the home of deceased from where appellant and the other parties lived. It does seem that if he had been trying to get deceased away from his home so he could be killed by the other alleged conspirators, Dick Lyon would not have carried him off in a different direction from Tucker and others who as claimed, were to do the killing.

The prosecution did not offer that proof in the case of the other defendants, and evidently offered it in this case because it was in desperate straights for proof against appellant, and because Dick Lyon happened to be a brother of appellant. There is no proof whatever to connect Dick Lyon with the difficulty, and it is conceded that appellant was not present at any time that day before the killing, when the acts and conversations between Dick Lyon and deceased took place. The prosecution evidently considered this testimony very vital to their case against appellant from the struggle it made to get it before the jury. Unless the rule against the admission of hearsay evidence is to be entirely abrogated, the admission of this evidence and that complained of in the second division of this brief could not be held to have been proper. An affirmance of this case with that

evidence in the record against him would simply mean a complete sacrifice of appellant's right to a fair trial according to law.

*H. Cassedy Holden*, special assistant attorney-general, for the state.

The appellant contends that the evidence was insufficient to support the verdict and that the court erred in overruling the motion to exclude the evidence of the state and for a peremptory instruction of acquittal.

With all deference to this view, it is submitted that the evidence of the state was sufficient to convict, if believed. It was proved that the defendant went with Tucker and Gardner and Boyce to the home of the deceased, looking for him just before the killing occurred; that the defendant had a pistol and loaned his shot gun to Tucker.

It was proved that anywhere from fifteen to thirty shots were fired, thus showing that more than one person fired a pistol. The fatal wound was a pistol bullet. The deceased stated in his dying declaration that all of the negroes shot at him. This was sufficient to convict. It is contended that the testimony of the witnesses, Gus Huddleston and Ella Jane Hatchet, should have been excluded. These two witnesses testified that they saw the defendant early in the night of the killing, and that he had a shot gun. This was wholly legitimate testimony tending to show preparation and tending to corroborate the other witnesses in the case.

It is contended that the court erred in sustaining the objection of the state to a question propounded to Tucker, which appears at page 61 of the record, and is as follows: "George had absolutely nothing to do with that killing."

There was no error in sustaining this objection. The witness was interrogated fully by counsel for the defendant as to the complicity of the defendant in the crime. The question was a repetitious one, and had already been answered.

SYKES, P. J., delivered the opinion of the court.

Appellant was convicted of murder, but the jury failed to agree as to the punishment; consequently he was sentenced by the court to life imprisonment in the penitentiary.

The appellant and several other negroes were jointly indicted for the murder of one Dotsie Chandler. A severance was granted, and two of the codefendants who were convicted of murder prosecuted appeals to this court, and the judgments were affirmed. It is insisted here that the appellant should have been discharged as a matter of law because the testimony failed to show a conspiracy, and failed to show that the appellant participated in any way in the shooting to death of the deceased.

The testimony shows that a short time before the killing, somewhere about 12 o'clock at night, several of the codefendants came to the home of this appellant, and that the appellant left with them. The appellant claims he was requested by one of them to go to the house of a negro woman. One of the codefendants who had been previously convicted testified in this case to the effect that the shotgun with which he shot and killed the deceased he borrowed from this appellant, and that the appellant had a pistol. The other codefendants were also armed with pistols. Armed in this way, they proceeded to the house of the deceased, and one of them asked the mother of deceased where he was, and whether or not he had gone off that night with Dick Lyon. (Dick is a brother of appellant.)

The testimony for the state is to the effect that the other negroes in the party were hid behind a crib, and one of them probably was sitting on the gate stile.

The testimony of the appellant is to the effect that he did not go upon the porch or in the yard of the deceased, but waited in the road for the two men that went in, and that he did not hear what was said. Ascertain-

ing that the deceased was not at home, these parties then left the house, and shortly thereafter met the deceased. The testimony relating to the shooting is conflicting. A dying declaration made by the deceased is to the effect that when these codefendants met him one of them spoke to him about a previous difficulty they had had, and that they agreed to drop it; that just as he started away from them he was shot in the back, first with a shotgun, then with a pistol; that there were a number of pistol shots fired, estimated by him and other witnesses at from fifteen to thirty. In this declaration the deceased stated that all of these parties fired.

Under these facts a conspiracy charge was proper. There was ample testimony from which the jury could believe that these defendants conspired together to kill the deceased and the further fact that they all participated in the shooting when the deceased was actually killed.

It is also objected that the testimony about the inquiry at the house of the deceased for him was inadmissible because the testimony failed to show that this defendant was there present. The testimony of the defendant himself was to the effect that he was out in the road at that time. The testimony for the state was that one of these defendants was sitting at the gate stile, and the other were behind a crib. In pursuance of this conspiracy the jury had a right to believe that all of the defendants went by there to ascertain the whereabouts of the deceased, and were either hidden in the yard close by or out in the road while one of the conspirators obtained this information. This testimony was clearly admissible.

There was also testimony in the record that the afternoon before the killing the appellant was seen by two women with a shotgun. It is contended that this testimony is too remote. While it possibly had no weight whatever with the jury, it is admissible to show that the appellant late that afternoon had a gun; it being remem-

bered that the man who fired a gun that night testified that he got it from this defendant.

While there are several other assignments argued, we have carefully examined all of them, and find no reversible error in the record.

The judgment of the lower court is affirmed.

*Affirmed.*